IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BENNY E. DAVIS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 23-cv-1249-DWD |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

On April 17, 2023, Petitioner Benny E. Davis filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 1).[1] The Motion survived preliminary review under Rule 4 of the Federal Rules Governing §2255 cases. This matter is now before the Court for consideration of the Motion. The Government filed its Motion for Order Authorizing Criminal Defense Attorney to Disclose Attorney/Client Communication (Doc. 4). The Court allowed Davis the opportunity to respond to that motion by order of May 30, 2023. (Doc. 5) but he did not respond. The Court then granted the Government's Motion and authorized Davis' defense attorney to disclose attorney-client communications. (Doc. 11). On August 21, 2023, the Government filed its Response (Doc. 11) to Davis' Motion and attached the affidavit of Davis' criminal defense attorney. (Doc. 11-1). Davis did not file a Reply to the Government's Response.

---

[1] Petitioner's Motion is dated March 2, 2023 (Doc. 1, p. 12), but the Court did not receive the filing until April 17, 2023 (Doc. 1, p. 15).

1

## I. Background

In November 2020, Petitioner Davis was indicted with one count of possession of a firearm by felon in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), (d)(1).  *See United States v. Davis*, No. 20-CR-30160-DWD, at R. 1.[2]  He entered a plea of guilty on November 9, 2021.  *Id.* at R. 34.  On March 7, 2022, the Court imposed a 120-month term of imprisonment, to be followed by a 3-year term of supervised release.  *Id.* at R. 48, R. 51.  Davis acknowledges he did not file a direct appeal (Doc. 1, p. 5).

Now, Davis presents four reasons why he believes his "sentence was imposed in violation of the Constitution or laws of the United States." *See* 28 U.S.C. § 2255.  The first relates to the performance of his court-appointed attorney, Federal Public Defender Kim C. Freter.  Davis argues that his court-appointed attorney was ineffective for allegedly miscommunicating the terms of his plea agreement, stating that she promised he would receive a 6-year term of imprisonment (Doc. 1, p. 4).  Second, Davis argues that he had no knowledge of the firearm at issue in this matter and lacked intent to possess the firearm, such that he unknowingly and unintelligently entered his guilty plea (Doc. 1, p. 5).  This argument appears to be based on precedent articulated in *Rehaif v. United States*, 204 L. Ed. 2d 594 (June 21, 2019), which predates both his indictment and sentencing in this matter.  Third, Petitioner argues that he failed to receive all due jail credits to be awarded from the date of his arrest until his sentencing (Doc. 1, p. 7). And finally, Petitioner argues that his guilty plea was involuntarily given because his "trial attorney

---

[2] "Doc." is a reference to the record in this matter. "R." refers to the record in the underlying criminal matter, *United States v. Davis*, No. 20-CR-30160-DWD

2

threatened [him] with more time if he instead upon Trial." (Doc. 1, p. 8). Thus, he maintains that his plea was coerced, and he only entered it to avoid a longer sentence.

## II. Discussion

Under § 2255(a), the Court will grant the "extraordinary remedy" of vacating, setting aside, or correcting Petitioner's sentence only if he shows it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Notably, a hearing on such matters is not necessary when "the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Taylor*, 605 F.Supp.3d 1079, 1081 (N.D. Ill. Jun. 1, 2022). The undersigned, as the District Judge who presided over Petitioner's underlying criminal case, "is uniquely suited to determine if a hearing is necessary." *See Taylor*, 605 F. Supp. 3d at 1081 (quoting *Rodriguez v. United States*, 286 F.3d 972, 987 (7th Cir. 2002)), as amended on denial of reh'g and reh'g en banc (7th Cir. 2002) (cleaned up).

As a substantive matter, the Sixth Amendment to the United States Constitution grants criminal defendants the right to the effective assistance of counsel. *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009) (citing *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009)). Under *Strickland*, the petitioner must prove: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that,

3

but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007). "Both components of the test must be satisfied; 'the lack of either is fatal.'" *Clay v. United States*, 311 F.Supp.3d 911, 918 (N.D. Ill. Apr. 19, 2018) (quoting *Edmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)).

During this inquiry, it is presumed that a petitioner's counsel was "reasonably proficient." *Galbraith v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002); *see also Wyatt v United States*, 574 F.3d 455, 458 (7th Cir. 2009) ("[A] movant must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"); *Clay*, 311 F.Supp.3d at 919 ("The central question in this analysis is not whether counsel's conduct deviated from best practices or most common custom, but instead, whether an attorney's representation amounted to incompetence under prevailing professional norms.") (cleaned up). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Put another way, in order to establish counsel's performance was deficient, the defendant must show errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006). "Counsel's representation need not be perfect, indeed not even good, to be constitutionally adequate." *Anderson v. United States*, 94 F.4th 564, 581 (7th Cir. 2024). Moreover, on the question of prejudice, Petitioner must prove there was a reasonable probability that,

absent counsel's objectively unreasonable or deficient performance, he would have insisted on proceeding to trial rather than plead guilty. *See Wyatt*, 574 F.3d at 458 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Galbraith*, 313 F.3d at 1008 (citing *Tezak v. United States*, 256 F.3d 702, 712 (7th Cir. 2001); *United States v. Jordan*, 870 F.2d 1310, 1318 (7th Cir. 1989)); *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002).

**A. The Timeliness of Davis' Petition**

Davis contends that his Motion is timely under 28 U.S.C. § 2255(f)(1) and (3). Typically, a one-year limitation period applies to the filing of § 2255 Motions. *See* 28 U.S.C. § 2255(f). This period runs from the latest of (1) the date on which the judgment of conviction becomes final, (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United states is removed, (3) the date on which the right asserted was initially recognized by the Supreme Court, or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f)(1)-(4).

Petitioner was sentenced on March 7, 2022. *United States v.* Davis, No. 20-CR-30160-DWD, at Docs. 48, 51. Although Petitioner's signed Motion is dated March 2, 2023 (Doc. 1, p. 5), the Clerk's Office did not receive his § 2255 Motion until April 17, 2023 (Doc. 1, p. 15). Rule 3(d) of the Federal Rules Governing § 2255 Cases in the United States District Courts provides that:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Here, Petitioner signed his Motion under penalty of perjury in apparent compliance with 28 U.S.C. § 1746 (Doc. 1, p. 12). He further declared that he placed the Motion in the prison mailing system on March 2, 2023 (*Id.*). Thus, it is not plainly apparent that his Motion is untimely under 28 U.S.C. § 2255(f).

**B.  Counsel's Promise to Davis That He Would Receive a Six-Year Sentence.**

Davis alleges that his attorney, Kim Freter, promised him that he would receive only a six-year sentence. Attorney Freter denies this to be the case. But apart from her denial is the record in the criminal matter which clearly undermines Davis' assertions.

First, the Plea Agreement. Davis agreed with the Government that §922(g)(1) carries a sentence of imprisonment of up to 10 years. (R. 35, pg. 1). The Plea Agreement provides that "the Court may impose a sentence different than what is described in this Plea Agreement – anywhere between the minimum sentence (if any) up to the statutory maximum sentence." *Id* at 3. And, significantly, the parties at the time of the plea were unable to agree on the sentencing guideline calculations and each submitted as part of the agreement their respective position on those calculations. *Id.* The Government suggested that Davis had an offense level of 30 and a Criminal History Category of VI, resulting in an imprisonment range of 168-210 months. Davis took the position that the

imprisonment range was 130-162 months but limited to the statutory maximum of 120 months.

Second, the change of plea hearing. The Court began the colloquy by advising Davis that if he had any questions that he wants to ask his attorney during the hearing, he would be given the opportunity to speak with attorney Freter. (R. 62, pg. 4). Later, the Court again reminded Davis that if he did not understand an aspect of the hearing, he could let the Court know. *Id* at 9.   And, before taking the plea, the Court asked Davis if he understood everything asked of him that day and he confirmed that he did. *Id*. at 18.

During the plea hearing the Court admonished Davis that his plea of guilty, if given, could not be "taken back" or retracted.  The Court went on to advise Davis that the Court is not party to the Plea Agreement, that the Court might not agree with the parties as to the appropriate sentence, and that the Court is free to vary from the sentence suggested by the parties. *Id* at 17-18.

Finally, Davis confirmed with the Court that he signed the Plea Agreement as his free and voluntary will and without threat, and that no one promised or guaranteed him anything in exchange for him signing it. *Id* at 10

Davis' argument that his attorney promised him that he would receive only 6 years as a sentence belies the information, warnings and admonishments conveyed to him in the Plea Agreement and during the plea hearing. It is also flies in the face of Davis' affirmations that he was not promised anything to have him plead guilty.

"[T}the representations of the defendant [at a plea hearing] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent

7

collateral proceeding." *Key v. U.S.*, 806 F.2d 133, 136 (7th Cir. 1986) citing *Thompson v Wainwright*, 787 F.2d 1447, 1460 (11th. Cir.). A petitioner's "declarations in open court carry a strong presumption of verity." *Id.* Here, that barrier cannot be scaled without finding that Davis lied under oath but is now telling the truth. But, "[j]udges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *U.S. v Peterson,* 414 F.3d 825, 827; See also *Bethel v. U.S.*, 458 F.3d 711, 719 (7th Cir. 2006). Davis offers no explanation, compelling or otherwise, for the contradiction between what he told the Court at the plea hearing and what he represents in his Petition. The Court observed nothing during the plea hearing that suggested or even hinted that his expectations for a six-year sentence would be realized despite the Court's admonitions to the contrary. Accordingly, Davis' argument that he is entitled to § 2255 relief because he was promised by Attorney Freter a sentence of six years must fail.

C.  **Davis' Lack of Knowledge of Prohibition on Possession of Firearms**

Davis next claims that he was unaware of the prohibition against possessing firearms and ammunition, lacked the intent to possess the firearms and, therefore, did not knowingly and intelligently enter his plea. (Doc, 1, pg. 5). The Government, however, asserts Davis' claim falls within the collateral attack waiver provision contained in the Plea Agreement.

A defendant may certainly waive the right to collaterally attack a conviction or sentence. *Dowell v. U.S.*, 694 F.3d 898, 901 (7th Cir. 2012). Such voluntary waivers must be enforced except in very limited instances such as "when the sentence exceeds the statutory maximum, when the plea or court relies on a constitutionally impermissible factor like race, or when counsel is ineffective in the negotiation of the plea agreement." *Id.* at 902, citing *Keller v. United States*, 657 F.3d 675, 681 (7th Cir.2011). Davis does not contend that any exception applies here. Nevertheless, enforcement of plea agreement is governed by the parties' understanding of the scope of the agreement as evidenced by the words and language they used. The Government points to the Davis' Plea Agreement and its waiver provision where it provides in pertinent part:

> 5. . . . **Defendant knowingly and voluntarily waives the right to seek modification of, or contest any aspect of, the conviction or sentence in any type of proceeding**.

(Doc. 35, pg. 8) (emphasis in original).

While the scope of the waiver provision in the Plea Agreement is broad and encompassing, it is specific in its reference to Davis' waiver of any right to contest any aspect of the conviction. The thrust of Ground Two of Davis' Petition is that he was unaware of the prohibition against his possession of firearms. (Doc. 1, pg. 5). This is a specific attack on the conviction that occurred as a result of his guilty plea because his knowledge of his prior felony conviction is an essential element of the indictment. Accordingly, the basis for the attack is necessarily within the scope of the Plea Agreement. As such, Ground Two of Davis' Petition should also fail. But, even if his collateral attack on the conviction is not within the scope of his Plea Agreement, Ground Two still fails.

9

Davis believes the case of *Rehaif* is his salvation because he did not know that there was a prohibition on his possessing firearms. Davis misunderstands *Rehaif*. *Rehaif* teaches that the Government must prove *both* that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm, such as a person who has been convicted of a crime punishable by a term of imprisonment of more than one year. *Rehaif v. United States*, 139 S.Ct. 2191, 2195, 588 U.S. 225, 229 (U.S., 2019). Here, Davis' Plea Agreement lists "Essential Elements" of the offense, including that he knowingly possessed the firearm as charged and that he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year. (R. 35, pg. 1). The Court in its change of plea colloquy reviewed each allegation contained in the indictment with Davis (R. 62, pg. 5) to which he then pled guilty. *Id* at 19. The Court reviewed the Stipulation of Facts signed by Davis which indicated that Davis knowingly possessed each of the five guns and that he "knew of his status that prohibited him from possessing firearms and ammunition at the time he possessed the firearms on July 22, 2020." R. 37, at 2-3. Observing no indication of a lack of knowledge of the essential elements of the offense, the Court made the specific finding Davis' guilty plea was "knowingly and voluntarily made, not the result of duress, coercion, force undue influence or inappropriate promises". *Id* at 20

There is nothing in the record to suggest Davis was ignorant of his status as a convicted felon, or that his status as a felon made his possession of a firearm unlawful. As such, Ground Two of his Petition fails.

**D. Davis' Claim That He Did Not Receive All Appropriate Jail Credits**

Davis next claims that he did not receive jail credits from the time of his arrest to the time of sentencing. (Doc. 1, pg. 7) As the Government correctly points out, "[r]equests for sentence credit, or for recalculation of time yet to serve, [do] not come under §2255." *Romandine v. U.S.*, 206 F.3d 731, 736 (7th Cir. 2000) Rather, "it is the Attorney General acting through [Bureau of Prisons] and not the sentencing Court, that computes the credit due under §3585(b). *United States v. Walker*, 917 F.3d 989, 993 (7th Cir., 2019) The relief Davis seeks must be made initially through the Bureau's administrative remedies. *Id* at 994. Accordingly, Davis' claim for calculation of jail credits fails.

**E. Davis' Allegation that Attorney Freter's Coerced Davis to Plead Guilty**

Davis claims that he was coerced to plead guilty by his attorney's threats of a longer sentence if insisted on a trial. (Doc. 1, pg. 8). This claim flies in the face of the plea hearing colloquy and the sworn statements of Davis.

During the plea hearing, the Court inquired of Davis regarding his signature and the Plea Agreement. Specifically, it asked whether Davis signed the Plea Agreement "as your free and voluntary will" to which he responded "Yes, sir". He was also asked whether anyone promised, guaranteed or threatened him to secure his signature on the Plea Agreement, to which Davis responded "No, sir". (R. 62, pg. 10)

Similarly, the Court inquired of Davis regarding his signature on the Stipulation of Facts:

| | | |
|---|---|---|
| The Court: | | I have also been provided with a Stipulation of Facts consisting of three pages, and on the third page there's again a signature line for Benny Davis. Is that your signature, sir? |
| Davis: | | Yes, sir. |
| The Court: | | You signed that as your free and voluntary will? |
| Davis: | | Yes, sir. |
| The Court: | | No one forced you in any way to sign that? |
| Davis: | | No, sir. |
| The Court: | | No one promised you anything to get you to sign that? |
| Davis: | | No, sir. |
| The Court: | | No one threatened you to get you to sign that? |
| Davis: | | No, sir. |

(R. 62, pg. 11)

It is unclear when or how he was threatened with a longer sentence of imprisonment. He does not offer a factual basis to support his allegation that such a threat occurred or that it would have influenced his decision. And, despite adequate opportunity to disclose to the Court that he is operating under some sort of coercion or threats of lengthier imprisonment, he chose not to bring it to the Court's attention. Just as noted in section II.B. above, "[T}the representations of the defendant [at a plea hearing] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding." *Key v. U.S.*, 806 F.2d 133, 136 (7th Cir. 1986) citing *Thompson v Wainwright*, 787 F.2d 1447, 1460 (11th. Cir.). A petitioner's

"declarations in open court carry a strong presumption of verity." Id. Davis' new allegations of threats and coercion do not overcome that presumption now.

### III.   CONCLUSION

For the reasons explained above, the Court finds that Davis is entitled to no relief on his Petition. Accordingly, Benny Davis' request to vacate, set aside, or correct his sentence under § 2255 is **DENIED** without a hearing. *See United States v. Taylor*, 605 F.Supp.3d at 1081. The case is **DISMISSED with prejudice**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

Rule 11(a) of the Rules Governing § 2255 Cases in the U.S. District Courts requires the issuance or denial of a certificate of appealability when a final order is entered against an applicant. Such a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke*, 542 U.S. 274, 281 (2004); citing *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008)); *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the Court **FINDS** the alleged grounds for relief lack merit, and reasonable jurists would not find that conclusion debatable or wrong. Since Petitioner has not made a "substantial showing of

the denial of a constitutional right," the Court **DECLINES** to issue a certificate of appealability.

    **SO ORDERED.**

Dated: January 28, 2026　　　　　　　　　/s/ *David W. Dugan*
　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　DAVID W. DUGAN
　　　　　　　　　　　　　　　　　　　　United States District Judge